# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

In re:  Bankr. No. 17-60495
Chapter 11

Richard Solberg, d/b/a Solberg Farm,

    Debtor

## PLAN OF REORGANIZATION
### January 29, 2018

Kevin T. Duffy, attorney # 134 600
Duffy Law Office
P.O. Box 715
Thief River Falls, MN 56701
218-681-8524 (T)
218-681-8525 (F)
**Attorney for Debtor**

## TABLE OF CONTENTS

| | | |
|---|---|---|
| ARTICLE I. | SUMMARY ……………………………………………………………………………… | 3 |
| ARTICLE II. | TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS ……………………………………………………… | 3 |
| ARTICLE III. | TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN ………………… | 5 |
| ARTICLE IV. | ALLOWANCE AND DISALLOWANCE OF CLAIMS; RESERVATION OF ALL RIGHTS, CLAIMS, AND ACTIONS ………………………………………………… | 10 |
| ARTICLE V. | PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES … | 10 |
| ARTICLE VI. | MEANS FOR IMPLEMENTATION OF THE PLAN ……………………………………… | 11 |
| ARTICLE VII. | MEANS FOR IMPLEMENTATION OF THE PLAN …………………………………… | 12 |
| ARTICLE VIII. | CONFIRMATION, DISCHARGE AND MODIFICATION OF THE PLAN ……… | 13 |
| ARTICLE IX. | OTHER PROVISIONS ……………………………………………………………………… | 15 |

# ARTICLE I
# SUMMARY

This Plan of Reorganization (the "Plan") is proposed by Richard Solberg (the "Debtor") under Chapter 11 of the Bankruptcy Code (the "Code") and sets forth the terms on which its creditors will be paid**.**

All creditors should refer to Articles II through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors has been circulated with this Plan.

**Your rights may be affected. The payments made pursuant to this Plan will be in full and final satisfaction of your claim. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

# ARTICLE II
# TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,
# U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

2.01 Unclassified Claims. Under section §1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

2.02 Administrative Expense Claims. Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the Effective Date of this Plan (as defined in Article VIII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. The following chart lists the Debtor's estimated administrative expenses and their proposed treatment under the Plan:

| **Type** | **Estimated Amount Owed** | **Proposed Treatment** |
|---|---|---|
| Professional Fees | $30,215.00 (as of January 6, 2018) | There shall be additional attorney's fees and costs incurred and a separate application for approval of those fees and costs shall be applied for by Duffy Law Office. The $30,215.00 of professional fees through January 6, 2018 shall be paid in full on the effective date of the plan, or in accordance with a separate agreement or according to Court Order if such fees are not approved by the Court on the effective date of the plan. |

| | | |
|---|---:|---|
| Office of the U.S. Trustee Fees | $1,000.00 | Paid in full on the Effective Date of the Plan |
| TOTAL | $31,215.00 | |

  2.03 <u>Priority Tax Claims</u>.  Each holder of a priority tax claim will be paid in accordance with the following:

  a. *Internal Revenue Service ("IRS")*. The IRS has filed a claim of $6,215.00 which is entitled to priority under 11 U.S.C. §507(a)(8). In accordance with §1129(a)(9), this priority tax claim must be paid in installments over a period not to exceed 60 months, unless the holder of the claim has otherwise agreed. The IRS has agreed to accept monthly payments amortized over a period of 60 months based on the interest rate as set forth by 26 U.S.C. §6621. The annual payment will be $1,417.79 payable on or before December 31, 2018 and annually on this same date thereafter until paid in full. The current interest rate is 3% per annum. If the reorganized debtor substantially defaults on the payments of the priority or secured tax due to the IRS under the plan, the entire tax debt still owed to the IRS shall become due and payable immediately, and the IRS will be entitled to an ex-parte order for dismissal of this case without notice or hearing on the filing of an affidavit with the court that attests to such default and also that the IRS mailed a letter by first class mail to debtors and debtors' counsel that gave notice of said default and a 30-day period to cure and that such a cure had not been performed.

  b. *Minnesota Department of Revenue*. The Minnesota Department of Revenue has filed a claim of $526.40 which is entitled to priority under 11 U.S.C. §507(a)(8). In accordance with §1129(a)(9)(C), this claim will be paid in full with annual interest of 3% per annum based on payments of $113.50 per year. The first payment shall be December 31, 2018 and annually on this same date thereafter until paid in full.

  2.04 <u>United States Trustee Fees</u>.  All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the Effective Date of this Plan will be paid on the Effective Date. After confirmation, the Debtor shall submit quarterly disbursement reports to the U.S. Trustee each month (or portion thereof) until the Chapter 11 case is closed, dismissed, or converted.  Such reports shall be in the format prescribed by the U.S. Trustee.  After the Effective Date of this Plan, Trustee will be allowed to administratively close the pending bankruptcy case and, after said closure, no longer have reporting requirements to the U.S. Trustee or obligations to pay quarterly fees to the U.S. Trustee based on monthly operating reports.

  2.05 <u>Tax Returns</u>.  The Debtor will timely file and pay all federal and state income tax returns as said returns come due post-petition.

# ARTICLE III
# TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

Secured Creditor Class:

    3.01    Class 1: Secured claim of Bremer Bank ("Bremer").

**Description.** Bremer Bank holds a debt in the amount $1,180,677.46 (#77013996) which is secured with a first mortgage on the Debtor's homestead as well as a second mortgage on approximately 2,750 acres of farm real estate. This claim is fully secured.

**Treatment.** The Class 1 creditor is impaired by the Plan. Bremer Bank shall be paid $105,633.77 on or before January 2, 2019 and annually thereafter on this same date. This debt should be amortized over twenty years at 6.5% interest resulting in the annual payment referenced above. Upon payment in full, Bremer Bank will release its mortgage on any and all real estate securing the debt.

    3.02    Class 2: Secured claim of Bremer Bank ("Bremer")

**Description.** Bremer Bank has a fully secured loan which is secured on farm equipment and machinery which the Debtor owns as well as a second lien on farm equipment and machinery which is being financed by John Deere and CNH Capital.

**Treatment.** The Class 2 creditor is impaired by the Plan. The chattel debt is $10,791.93 (#77000475). This chattel debt shall be amortized over seven years at 6.5% interest with annual payments of $1,923.05 annually on or before January 2, 2019 and annually thereafter on this same date until paid in full. Upon payment in full of this debt, Bremer Bank shall release any and all security agreements, UCC documentation or any other security instruments related to farm equipment and equipment owned by the Debtor.

    3.03    Class3 : Secured claim of Bremer Bank ("Bremer")

**Description.** Bremer Bank has a fully secured loan which is secured on farm equipment and machinery which the Debtor owns as well as a second lien on farm equipment and machinery which is being financed by John Deere and CNH Capital.

**Treatment.** The Class 3 creditor is impaired by the Plan. The chattel debt is $18,853.93 (#77000794). This chattel debt shall be amortized over seven years at 6.5% interest with annual payments of $3,359.64 annually on or before January 2, 2019 and annually thereafter on this same date until paid in full. Upon payment in full of this debt, Bremer Bank shall release any and all security agreements, UCC documentation or any other security instruments related to farm equipment and equipment owned by the Debtor.

    3.04    Class 4: Secured claim of Bremer Bank ("Bremer")

**Description.** Bremer Bank has a fully secured loan which is secured on farm equipment and

machinery which the Debtor owns as well as a second lien on farm equipment and machinery which is being financed by John Deere and CNH Capital.

**Treatment.**  The Class 4 creditor is impaired by the Plan. The chattel debt is $60,424.27 (#77003232). This chattel debt shall be amortized over seven years at 6.5% interest with annual payments of $10,767.20 annually on or before January 2, 2019 and annually thereafter on this same date until paid in full. Upon payment in full of this debt, Bremer Bank shall release any and all security agreements, UCC documentation or any other security instruments related to farm equipment and equipment owned by the Debtor.

      3.05    Class 5: Secured claim of Bremer Bank ("Bremer")

**Description.**   Bremer Bank has a fully secured loan which is secured on farm equipment and machinery which the Debtor owns as well as a second lien on farm equipment and machinery which is being financed by John Deere and CNH Capital.

**Treatment.**  The Class 5 creditor is impaired by the Plan. The chattel debt is $1,204,643.08 (#3384017). This chattel debt shall be amortized over seven years at 6.5% interest with annual payments of $214,659.25 annually on or before January 2, 2019 and annually thereafter on this same date until paid in full. Upon payment in full of this debt, Bremer Bank shall release any and all security agreements, UCC documentation or any other security instruments related to farm equipment and equipment owned by the Debtor.

      3.06    Class 6: Secured claim of AXA Equitable Life Insurance ("AXA")

**Description.**   This Class 6 creditor has a first mortgage on approximately 2,750 acres of farm real estate owned by the Debtor. The debt of AXA Equitable amounts to $1,803,958.51 (#60715224). This creditor is fully secured and its claim is impaired by the Plan.

**Treatment.**  The AXA Equitable debt shall be amortized out over twenty years at 6.5% interest with annual payments of $161,397.96 payable on or before January 2, 2019 and annually thereafter until paid in full. AXA Equitable shall release any and all of its mortgages on the real estate owned by the Debtor upon payment of its mortgage in full.

      3.07    Class 7: Secured claim of CNH Industrial Capital American LLC ("CNH")

**Description.**   CNH Capital has a chattel loan secured on various pieces of farm equipment and machinery. The debt amounts to $600,000 and is fully secured. This Chapter 11 Plan impairs the claim of this Class 4 creditor.

**Treatment.**  The CNH Capital debt shall be amortized out over seven years at 6.5% interest with annual payments of $110,159 payable on or before January 2, 2019 and annually thereafter until paid in full. CNH Capital shall release any and all security agreements and UCC financing statements along with any other security documents once their debt is paid in full.

3.08    Class 8: Secured claim of John Deere Credit ("John Deere")

**Description.**   This Class 8 creditor has a debt amounts to $65,933.68 (#3274) which is fully secured on farm equipment and machinery owned by the Debtor. This Chapter 11 Plan impairs the claim of this Class 8 creditor.

**Treatment.**  The $65,933.68 debt shall be amortized out over seven years at 6.5% interest with annual payments of $11,748.94 payable on or before January 2, 2019 and annually thereafter until paid in full. John Deere shall release any and all security agreements and UCC financing statements along with any other security documents once their debt is paid in full.

3.09    Class 9: Secured claim of John Deere Credit ("John Deere")

**Description.**   This Class 9 creditor has a debt amounts to $20,983.08 (#6362) which is fully secured on farm equipment and machinery owned by the Debtor. This Chapter 11 Plan impairs the claim of this Class 9 creditor.

**Treatment.**  The $20,938.08 debt shall be amortized out over seven years at 6.5% interest with annual payments of $3,739.04 payable on or before January 2, 2019 and annually thereafter until paid in full. John Deere shall release any and all security agreements and UCC financing statements along with any other security documents once their debt is paid in full.

3.10    Class 10: Secured claim of John Deere Credit ("John Deere")

**Description.**   This Class 10 creditor has a debt amounts to $71,691.69 (#6868) which is fully secured on farm equipment and machinery owned by the Debtor. This Chapter 11 Plan impairs the claim of this Class 10 creditor.

**Treatment.**  The $71.691.69 debt shall be amortized out over seven years at 6.5% interest with annual payments of $12,774.97 payable on or before January 2, 2019 and annually thereafter until paid in full. John Deere shall release any and all security agreements and UCC financing statements along with any other security documents once their debt is paid in full.

3.11    Class 11: Secured claim of John Deere Credit ("John Deere")

**Description.**   This Class 11 creditor has a debt amounts to $92,359.18 (#2681) which is fully secured on farm equipment and machinery owned by the Debtor. This Chapter 11 Plan impairs the claim of this Class 11 creditor.

**Treatment.**  The $92.359.18 debt shall be amortized out over seven years at 6.5% interest with annual payments of $16457.78 payable on or before January 2, 2019 and annually thereafter until paid in full. John Deere shall release any and all security agreements and UCC financing statements along with any other security documents once their debt is paid in full.

3.12    Class 12: Secured claim of Ford Motor Credit ("Ford")

**Description.** This Class 12 creditor has a claim in the amount of $58,928.54. This debt is fully secured by the Debtor's 2016 Ford F150 pickup. This debt is not impaired by the Plan and the Debtor shall continue to make regular annual payments directly to the creditor in accordance with the terms of the original contract.

**Treatment.** The debtor is current in his payment to Ford Motor Credit and he shall continue to make his annual payments of $15,000 to this creditor until the debt is paid in full. Ford Motor Credit shall release any and all security interests it has in the Debtor's 2016 Ford F150 pickup once payment has been made in full.

    3.13    Class 13: Secured claim of Ford Motor Credit ("Ford")

**Description.** This Class 13 creditor has a claim in the amount of $11,228.91. This debt is fully secured by the Debtor's 2008 Ford F150 pickup. This debt is not impaired by the Plan and the Debtor shall continue to make regular monthly payments directly to the creditor in accordance with the terms of the original contract.

**Treatment.** The debtor is current in his payment to Ford Motor Credit and he shall continue to make his monthly payments of $373 to this creditor until the debt is paid in full. Ford Motor Credit shall release any and all security interests it has in the Debtor's 2008 Ford F150 pickup once payment has been made in full.

    3.14    Class 14: Secured claim of Ultima Bank ("Ultima")

**Description.** Ultima Bank holds a fully secured real estate mortgage on the bin site owned by the Debtor. The claim amounts to $341,520.67

**Treatment.** The Ultima Bank debt of $341,520.67 shall be amortized over twenty years at 6.5% interest. This claim is impaired by the Plan. The annual payment to be paid by the Debtor to Ultima Bank shall amount to $30,555.44 annually. This payment shall be made to Ultima Bank on or before January 2, 2019 and on the same date annually thereafter until paid in full. Ultima Bank shall release any and all mortgages it has on real estate belonging to the Debtor upon full payment of the note and mortgage.

    3.15    Class 15: Secured claim of Nathan McFarland ("McFarlane")

**Description.** Nathan McFarlane holds a fully secured real estate claim on the bin site located in Greenbush, Minnesota. The debt amounts to $165,000.

**Treatment.** The Class 15 creditor is impaired by the Chapter 11 Plan. This debt shall be amortized over twenty years at 6.5% interest with annual payments of $14,762.35 being made by the Debtor to this creditor on or before January 2, 2019 and on the same date annually thereafter until paid in full. This creditor shall release any and all mortgages it has on real estate belonging to the Debtor after full payment of the note and mortgage under this claim.

3.16    Class 16: Secured claim of Richard Roasch ("Roasch")

**Description.**   Richard Roasch holds a fully secured real estate and mortgage claim on real property owned by the Debtor in Mesa, Arizona. The secured claim of this creditor amounts to $175,000.

**Treatment.**  The Plan does not impair this Class 16 claim and the Debtor shall continue to make monthly payments on this claim until the residence is sold. The residence is currently listed for sale for $430,000.

3.17    Class 17: Secured claim of Ultima Bank ("Ultima")

**Description.**   Ultima Bank currently holds a first lien on some specific items of equipment and vehicles owned by the Debtor. The amount of the Ultima Bank claim is $95,228.08.

**Treatment.**  The Plan impairs this Class 17 claim. Ultima Bank shall be paid out on its $95,228.08 claim with an amortization over seven years at 6.5% interest and annual payments of $16,969.00 on or before January 2, 2019 and the same date thereafter annually until paid in full. This creditor shall release any and all security, UCC statements and security documentation it has related to the machinery, equipment and vehicles securing this debt upon payment of this claim in full by the Debtor.

3.18    Class 18: Secured claim of Ultima Bank ("Ultima")

**Description.**   Ultima Bank currently holds a first lien on some specific vehicles owned by the Debtor. The amount of the Ultima Bank claim is $12,746.33.

**Treatment.**  The Plan impairs this Class 18 claim. Ultima Bank shall be paid out on its $12,746.33 claim with an amortization over seven years at 6.5% interest and annual payments of $2,271.31 on or before January 2, 2019 and the same date thereafter annually until paid in full. This creditor shall release any and all security, UCC statements and security documentation it has related to the machinery, equipment and vehicles securing this debt upon payment of this claim in full by the Debtor.

Unsecured Creditor Class:

3.19    Class 19: General Unsecured Claims

**Description.**  The unsecured creditors in this case total $1,710,625.87. However, it should be noted that many of these creditors failed to file a proof of claim by the claims "Bar Date". As far as the Debtor can estimate, 11 of the unsecured creditors have not filed valid claims by the claims "Bar Date". Because of this fact, the Debtor will only be paying $1,350,379.89 of unsecured claims in this case. It should also be noted that three different creditors who are included in the unsecured class, namely: Norcan Seeds, RRV and Zaits Trust all have claims pending against Bremer Bank for cash collateral that they believe that they have a security interest in from the 2017 growing season. Those claims have yet to be determined and whether any of these landlords and input suppliers have a valid secured claim in

the cash collateral. In the event any of these creditors succeed in their claims, they will have to be removed from the unsecured class if they receive their claims from the Court proceeding in March of 2018.

**Treatment.** The Class 19 creditors are impaired by the Plan. The Debtor shall pay 100% to the unsecured creditors. The unsecured creditor class shall receive payment amortized out over 20 years at 5.5% interest with an annual payment of $111,469.10 on or before January 2, 2019 and on the same date annually thereafter until paid in full.

## ARTICLE IV
## ALLOWANCE AND DISALLOWANCE OF CLAIMS;
## RESERVATION OF ALL RIGHTS, CLAIMS, AND ACTIONS

4.01 <u>Disputed Claim</u>. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated. Claims are allowed in the amounts set forth in Plan Article IV.

4.02 <u>Delay of Distribution on a Disputed Claim</u>. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

4.03 <u>Settlement of Disputed Claims</u>. The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

4.04 <u>Reservation of Rights, Claims and Actions</u>. The Debtor reserves all of its rights, at law or in equity, not otherwise specifically modified by this Plan, to commence adversary proceedings, or take any other legal action allowed by the Bankruptcy Code, or other applicable law. The failure of the Debtor to specifically list any claim, cause of action, right of action, suit or proceeding in the Bankruptcy Schedules, the Disclosure Statement, or in the Plan does not, and will not be deemed to constitute a waiver or release by the Debtor of any avoidance action. Pursuant to 11 U.S.C. §§ 105 and 1123(b)(3), the Debtor will have the full power, authority, discretion and standing to prosecute, settle, release, compromise, enforce, or otherwise resolve all avoidance actions, with the net proceeds derived therefrom, if any, being distributed to the holders of allowed claims in Class 2 in accordance with this Plan.

## ARTICLE V
## PROVISIONS FOR EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES

5.01 <u>Assumed Executory Contracts and Unexpired Leases</u>. Even though the Debtor is in default on all of his landlord contracts relating to farmland that he rented in 2017, the Debtor intends

10

to try to cure those defaults and rent the farmland from the various landlords in 2018 and in future years. The Debtor recognizes that RRV and Zaitz Trust have received a release of the automatic stay and are not legally bound to rent any land to the Debtor. The Debtor is also assuming all executory contracts and leases that he has with John Deere Credit as well CNH Capital.

5.02    Rejected Executory Contracts and Unexpired Leases. The Trustee will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 5.01 above, or before the date of the order confirming this Plan, upon the Effective Date of this Plan.

**ARTICLE VI**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

6.01    Continued Operation.  Payments will be made from cash flow from the continued operation Debtor's business.

6.02    Payments Under the Plan.  Payments under this Plan will be made by check, mailed with first class postage prepaid, to the claimant at the address listed on its Proof of Claim, or if no Proof of Claim has been filed by the date of the hearing on confirmation, to the address listed on the Debtor's bankruptcy schedules. Questions concerning payments should be addressed to Kevin T. Duffy at (218) 681-824 or duffylaw@mncable.net.

6.03    Timing of Payments.  Payments or distributions under this Plan will be made as soon as practicable on or following the Effective Date, except as otherwise specified in this Plan.

6.04    Unclaimed Payments.  In the event a payment is returned to the Debtor unclaimed, with no indication of the claimant's forwarding address, the Debtor will hold such payment for a period of six (6) months from the date of return.  If not claimed by the claimant by the end of that period, the payment shall be retained by the Debtor to the extent all Class 2 creditors have been paid in full.

6.05    Untimely Claims.  Claims not timely filed or claims that are scheduled as disputed, contingent, or unliquidated on which a claim has not been timely filed will not participate in distributions under this Plan and will be discharged under 11 U.S.C. § 1141(d), unless otherwise ordered by the Bankruptcy Court.

6.06    Prepayment Allowed.  The Debtor may complete payments under the Plan earlier than anticipated without incurring any pre-payment penalties.

6.07    Section 1146 Exemption from Certain Taxes and Fees.  Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property in contemplation of, in connection with, or pursuant to this Plan shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the confirmation order shall direct and be deemed to direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.  Such

exemption specifically applies, without limitation, to (1) the creation and recordation of any mortgage, deed of trust, lien or other security interest; (2) the making or assignment of any lease or sublease; (3) any restructuring transaction authorized by this Plan; or (4) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with this Plan, including: (a) any merger agreements; (b) agreements of consolidation, restructuring, disposition, liquidation or dissolution; (c) deeds; or (d) assignments executed in connection with any transaction occurring under this Plan.

## ARTICLE VII
## GENERAL PROVISIONS

7.01    Definitions and Rules of Construction.  The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

a.    Allowed Claim means a Claim against the Debtor to the extent that proof of such claim was timely filed or deemed filed, or late filed (after notice and opportunity for hearing given to counsel for the Debtor) with leave of the Bankruptcy Court and which is allowed by a final order of the Bankruptcy Court.

b.    Allowed Secured Claim are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.  If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

c.    Filing Date is the date the Debtor's bankruptcy petition was filed (August 10, 2017).

7.02    Effective Date of Plan. The Effective Date of this Plan is thirty (30) days following the date of the entry of the Order of confirmation.  But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

7.03    Severability.  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

7.04    Binding Effect.   The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

7.05    Captions.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

7.06    Controlling Effect.   Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of

Minnesota govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

## ARTICLE VIII
## CONFIRMATION, DISCHARGE AND MODIFICATION OF THE PLAN

8.01. <u>Effect of Confirmation and Discharge</u>. Confirmation of this Plan shall constitute a complete waiver, release, and satisfaction of all claims and interests of all creditors against the Debtor, except as provided in this Plan. Confirmation of this Plan does not discharge any debt provided for in this Plan until the Effective Date of this Plan when completion of all payments contemplated by this Plan will be made. The discharge of the Debtor shall be effective as to each claim, regardless of (i) whether a Proof of Claim was filed, (ii) whether the claim is an Allowed Claim, Allowed Secured Claim, priority claim, or (iii) whether the holder thereof votes to accept the Plan.

8.02 <u>Revesting of Property of Estate</u>. Except as provided for in the Plan and the confirmation order, on the Effective Date the reorganized Debtor shall be vested with full ownership of and dominion over Debtor's' property and assets free and clear of all claims, liens, encumbrances, charges and other interests of creditors arising prior to the Filing Date.

8.03 <u>Modifications</u>. The proponent may amend or modify this Plan in a manner provided for under 11 U.S.C. § 1127(a) or (b). The proponent shall give notice of any proposed modification to the U.S. Trustee and any other parties designated by the Bankruptcy Court. The proponent also reserve the right to make such modifications at any hearings on confirmation as are necessary to permit this Plan to be confirmed under 11 U.S.C. § 1129(b).

8.04 <u>Releases by Holders of Claims</u>. As of the Effective Date and except as set forth in this Plan, each holder of a Claim or Interest shall be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged the Debtor, the reorganized Debtor or any other party from any and all claims, interests, obligations, rights, suits, damages, causes of action, remedies and liabilities whatsoever, including any derivative claims assertable on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such person would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's restructuring, the Debtor's Chapter 11 case, the purchase, sale or rescission of the purchase or sale of any security of or claim against the Debtor or the reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any claim that is treated in this Plan, the business or contractual arrangements between any Debtor and any released party, the restructuring of claims and interests before or during the Debtor's Chapter 11 case, or the negotiation, formulation or preparation of this Plan, the Disclosure Statement, any plan supplement or related agreements, instruments or other documents, (collectively, "Released Claims"), other than Released Claims against the Debtor, the reorganized Debtor, or a released party arising out of or relating to any act or omission of that party constituting willful misconduct or gross negligence; *provided*, *however*, that this Plan shall not release the Debtor, the reorganized Debtor and the released parties from any cause of action held by a governmental entity existing as of the Effective Date based on (i) the Internal Revenue Code or

other domestic state, city, or municipal tax code, (ii) the environmental laws of the United States or any domestic state, city, or municipality, (iii) any criminal laws of the United States or any domestic state, city, or municipality, (iv) the Securities and Exchange Act of 1934 (as now in effect or hereafter amended), the Securities Act of 1933 (as now in effect or hereafter amended), or other securities laws of the United States or any domestic state, city or municipality, (v) the Employee Retirement Income Security Act of 1974, as amended, or (vi) the laws and regulations of the Bureau of Customs and Border Protection of the United States Department of Homeland Security.

8.05 <u>Injunction</u>. FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY CAUSE OF ACTION RELEASED OR TO BE RELEASED PURSUANT TO THIS PLAN OR THE CONFIRMATION ORDER.

FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE RELEASES GRANTED IN THIS PLAN, THE RELEASING PARTIES SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE RELEASED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST OR REMEDY RELEASED OR TO BE RELEASED PURSUANT TO THIS PLAN.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN, THE PLAN SUPPLEMENT OR RELATED DOCUMENTS, OR FOR OBLIGATIONS ISSUED PURSUANT TO THIS PLAN, ALL PERSONS WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED OR DISCHARGED ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS: (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (2) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST SUCH PERSONS ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (3) CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH PERSONS OR THE PROPERTY OR ESTATE OF SUCH PERSONS ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; AND (4) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED, SETTLED OR DISCHARGED PURSUANT TO THIS PLAN.

THE RIGHTS AFFORDED IN THIS PLAN AND THE TREATMENT OF ALL CLAIMS AND INTERESTS HEREIN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION OF ALL CLAIMS AND INTERESTS OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON CLAIMS FROM AND AFTER THE PETITION DATE, AGAINST THE DEBTOR OR ANY OF ITS ASSETS, PROPERTY OR ESTATE. ON THE EFFECTIVE DATE, ALL SUCH CLAIMS AGAINST THE DEBTOR SHALL BE FULLY RELEASED AND DISCHARGED, AND THE INTERESTS SHALL BE CANCELLED (EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN).

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR IN THIS PLAN OR IN OBLIGATIONS ISSUED PURSUANT HERETO FROM AND AFTER THE EFFECTIVE DATE, ALL CLAIMS AGAINST THE DEBTOR

SHALL BE FULLY RELEASED AND DISCHARGED, AND ALL INTERESTS SHALL BE CANCELLED, AND THE DEBTOR'S LIABILITY WITH RESPECT THERETO SHALL BE EXTINGUISHED COMPLETELY, INCLUDING ANY LIABILITY OF THE KIND SPECIFIED UNDER SECTION 502(G) OF THE BANKRUPTCY CODE.

ALL PERSONS SHALL BE PRECLUDED FROM ASSERTING AGAINST THE DEBTOR, THE DEBTOR'S ESTATE, THE REORGANIZED DEBTOR, EACH OF THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, AND EACH OF THEIR ASSETS AND PROPERTIES, ANY OTHER CLAIMS OR INTERESTS BASED UPON ANY DOCUMENTS, INSTRUMENTS OR ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED BEFORE THE EFFECTIVE DATE.

## ARTICLE IX
## OTHER PROVISIONS

9.01 <u>Requirements for Confirmation</u>. In order to confirm the Plan, the Bankruptcy Code requires that the Bankruptcy Court make a series of determinations concerning the Plan, including: (i) that the Plan has classified creditor claims in a permissible manner; (ii) that the contents of the Plan comply with the technical requirements of Chapter 11 of the Bankruptcy Code; (iii) that the proponents have proposed the Plan in good faith; and (iv) that the Debtor's disclosures concerning the Plan have been adequate and have included information concerning all payments made or promised in connection with the Plan and the bankruptcy case, as well as the identity, affiliations and compensations to be paid to the Debtor and any insiders. The proponents intend to seek a ruling of the Bankruptcy Court at the hearing on confirmation of the Plan that all of the above conditions have been met. In the event this Plan is not confirmed under 11 U.S.C. § 1129(a), the proponents request that this Plan be confirmed under 11 U.S.C. § 1129(b).

9.02 <u>Voting</u>. The Bankruptcy Code also requires that the Plan be accepted by the requisite votes of creditors, that the Plan be feasible, and that Confirmation of the Plan be in the best interest of all creditors. To confirm the plan, the Bankruptcy Code must find that all of these conditions are met. Therefore, even if the creditors of the Debtor accept the Plan by the requisite votes, the Bankruptcy Court must make independent findings respecting the Plan's feasibility and whether it is in the best interests of the Debtor's creditors before it may confirm the Plan. The classification, "best interest" and feasibility requirements of confirmation are discussed in the Disclosure Statement.

9.03 <u>Retention of Jurisdiction</u>. The Bankruptcy Court will retain jurisdiction of the Debtor and its operations subsequent to the Confirmation Date of the Plan for the purpose of allowing Claims and hearing objections, if any, thereto, for estimating any contingent or unliquidated Claims, for conducting adversary proceedings with respect to property identified herein, including preference actions, for the purpose of determining or resolving any defaults, disputes, ambiguity, or other similar matters under this Plan, and for the purpose of approving administrative expenses.

9.04 <u>Counterparts</u>. This Plan may be executed in counterparts. Each such executed counterpart shall be deemed an original but shall constitute one and the same instrument. For purposes of execution of this Plan, a facsimile signature will be treated the same as an original signature.

9.05 <u>Final Decree</u>. After the Effective Date of this Plan, the Debtor will be allowed to administratively close the pending bankruptcy case and, after said closure, no longer have reporting requirements to the U.S. Trustee or obligations to pay quarterly fees to the U.S. Trustee based on monthly operating reports.

Dated: January 29, 2018

Signed: _____
Richard Solberg
Solberg Farm
Proponent of Plan of Reorganization

Dated: January 29, 2018

Signed: _____
Kevin T. Duffy (Atty #134 600)
Duffy Law Office
Attorney for Plan Proponent

16

(11/14)

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re
**Richard Allen Solberg**

SIGNATURE DECLARATION
(For use in electronically filed cases only)

Debtor(s).   Case No. **17-60495**

☐ PETITION, SCHEDULES & STATEMENTS
☐ CHAPTER 13 PLAN
☐ VOLUNTARY CONVERSION, SCHEDULES AND STATEMENTS
☐ AMENDMENT TO PETITION, SCHEDULES & STATEMENTS
☐ MODIFIED CHAPTER 13 PLAN
☑ OTHER (Please describe: **Chapter 11 Plan of Reorganization** )

I [We], the undersigned debtor(s) or authorized representative of the debtor, make the following declarations under penalty of perjury:

1. The information I have given my attorney and provided in the electronically filed petition, statements, schedules, amendments, and/or chapter 13 plan, as indicated above, is true and correct;

2. The Social Security Number or Tax Identification Number I have given to my attorney for entry into the court's Case Management/Electronic Case Filing (CM\ECF) system as a part of the electronic commencement of the above-referenced case is true and correct;

3. **[individual debtors only]** If no Social Security Number was provided as described in paragraph 2 above, it is because I do not have a Social Security Number;

4. I consent to my attorney electronically filing with the United States Bankruptcy Court my petition, statements and schedules, amendments, and/or chapter 13 plan, as indicated above, together with a scanned image of this Signature Declaration;

5. My electronic signature contained on the documents filed with the Bankruptcy Court has the same effect as if it were my original signature on those documents; and

6. **[corporate and partnership debtors only]** I have been authorized to file this petition on behalf of the debtor.

Date: **January 29, 2018**

X _/s/ Richard A. Solberg_     X _____
Signature of Debtor or Authorized Representative     Signature of Joint Debtor

**Richard Allen Solberg**
Printed Name of Debtor or
Authorized Representative

Printed Name of Joint Debtor